## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**ELLIOTT JONES,**

  **Plaintiff,**

**vs.**           **CASE NO. 1:05CV83-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

  **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**  **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on July 26, 1995, alleging a disability onset date of January 2, 1995, because of drug and alcohol dependence, nerve damage, back pain, and depression. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted an initial hearing on October 7, 1998,

and entered an unfavorable decision on November 13, 1998.  The Appeals Council remanded the cause to the ALJ in a decision dated March 31, 2000, and a supplemental hearing was held on August 30, 2001, resulting in another unfavorable decision dated December 20, 2002.  The Appeals Council denied Plaintiff's second request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

## B.    FINDINGS OF THE ALJ

The ALJ found that Plaintiff was insured for benefits through March 31, 2000, and must therefore prove he was disabled prior to that date.  (R. 19).  The ALJ found that Plaintiff had substance abuse history since 1989 requiring three separate inpatient hospitalizations.  (R. 22).  He had also had several hospitalizations for abdominal problems and neuropathy and was told each time to quit smoking, drinking and smoking crack cocaine.  (R. 22-24).  The ALJ requested interrogatories from an impartial medical expert who responded that Plaintiff met sections b and c of Listing 12.09 for substance disorders and met this listing from April 18, 1996, through February 7, 2002.  (R. 27). The expert also found that Plaintiff's mental and physical conditions would have markedly improved if he had followed prescribed treatment and quit the substances.  (R. 27).  Consequently the ALJ found that the medical evidence established that Plaintiff had severe impairments as a result of polysubstance addiction disorder with resulting substance induced depression, a chronic pain syndrome with back pain and peripheral neuropathy, a history of abdominal surgeries for peptic ulcer disease and a ventral hernia and hypertension.  (R. 27).  The ALJ accepted the opinion of the medical expert who was present at the hearing, heard all the testimony, and had reviewed the medical

**No. 1:05CV83-MMP/AK**

record, who found that Plaintiff's substance abuse in combination with his other impairments precluded him from substantial gainful activity.  (R. 27).  The ALJ found that Plaintiff met Listing 12.09, and had marked restrictions of activities of daily living, and moderate to marked difficulties in maintaining social functioning.  Plaintiff also had marked difficulties in maintaining concentration, persistence, or pace, and evidence of repeated episodes of decompensation of extended duration, which made his substance addiction a contributing factor material to the determination of disability.  (R. 28).  Pursuant to the law and regulations, this must lead to a finding that Plaintiff is not disabled.  (R. 29).  The ALJ found that plaintiff had smoked for 26 years and did not intend to quit, although he had cut down, he drank up until 2001 and used cocaine as recently as December 2000.  (R. 29).  These abuses clearly resulted in complications of pain with peripheral neuropathy, stomach pain and ulcers, breathing complaints, and depressive symptoms.  (R. 29).  He ignored repeated suggestions to quit and to get help for his addictions.  (R. 29).  The law is replete with cases justifying a denial of benefits because the claimant failed to quit smoking when urged to do so by his physicians.  (R. 33-34).  Smoking has been linked to all of the physical conditions of which Plaintiff complains.  (R. 38).  Thus, the ALJ finds that Plaintiff has failed to follow prescribed medical treatment and that If he had followed such treatment he would have been restored to SGA.  Putting aside the substance abuse disorder, the ALJ examined each of Plaintiff's other conditions to see if they met the requirements of Listings 1.00

**No. 1:05CV83-MMP/AK**

(Musculoskeletal), 11.00 (Neurological), 14.00 (Immune System), 5.00 (Digestive System) or 4.00 (Cardiovascular).  (R. 39-41).  He found that they did not.

The ALJ rejected the pain assessment completed by Dr. Duncan, who did not examine Plaintiff, he only looked at his chart.  (R. 44).  The ALJ also rejected the report of Dr. Smith who opined that Plaintiff was totally precluded from work, but did not include any examining or treatment records.  (R. 44).

The ALJ finds that the assessment of Dr. Guzman is the best evidence of Plaintiff's ability to do work related activities absent substance abuse problems and it is consistent with light work activity.  (R. 46).  The ALJ also accepts Dr. Depaz's assessment insofar as it is consistent with light work activity, but he rejects his additional restrictions for standing and walking no more than two hours out of an eight hour day, sit/stand option, and limited reaching and repetitive use of the right elbow as there are no medical records to support these restrictions and they appear to be based on Plaintiff's subjective complaints alone.  (R. 46).

The ALJ finds Plaintiff capable of performing light work activity absent his substance abuse disorder.  His past work was medium level, so he is precluded from performing his past relevant work.  However, the vocational expert testified that there were a number of jobs which he could perform such as parking lot cashier, service dispatcher, lunch counter attendant, small products assembler, and circulation clerk. (R. 48-49).

**No. 1:05CV83-MMP/AK**

C.   __ISSUES PRESENTED__

Plaintiff argues that: (1) the ALJ erred in finding that Plaintiff's drug and alcohol use is material to his disability; and (2) the ALJ erred in not including all of Plaintiff's impairments in his hypotheticals to the vocational expert.

The government responds that the ALJ found that without Plaintiff's substance abuse the other impairments he suffered from (chronic pain syndrome with back pain and peripheral neuropathy, a history of abdominal surgeries for peptic ulcer disease and a hernia, hypertension, and depressive disorder left him with the residual functional capacity to perform light work and that there were a number of jobs in the national economy which Plaintiff could still perform.  Further, the government responds that Plaintiff continued to use drugs and alcohol from 1995 though at least 2000 and continued to smoke through the date of the decision.  Since he is claiming an onset of 1995, the evidence supports a finding that his drug and alcohol use is a contributing factor to his alleged disability.  Finally, the ALJ specifically rejected the opinion of Dr. Duncan who found Plaintiff's mental impairment severe and therefore it was unnecessary to include a severe mental impairment in his hypothetical to the vocational expert.  The ALJ also rejected the restricted physical limitations set forth in Dr. Depaz's assessment because Dr. Depaz found Plaintiff capable of performing light work in general and his objective findings did not support such a limited assessment (unable to stand or walk more than two hours out of an 8 hour day) so this limitation also did not

**No. 1:05CV83-MMP/AK**

need to be include in the hypothetical since the ALJ articulated his reasons for rejecting this opinion.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the

**No. 1:05CV83-MMP/AK**

Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d

227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the

Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.

Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's

failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed

requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To

qualify as a disability the physical or mental impairment must be so severe that claimant

is not only unable to do his previous work, "but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in

five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those
        listed in Appendix 1 of 20 C.F.R. Part 404?

**No. 1:05CV83-MMP/AK**

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff received drug treatment at Charter Springs Hospital from 2/21/91 through 3/25/91 for cocaine abuse.  He admitted to excessive alcohol use, marijuana use, and smoking one to two packs of cigarettes a day.  (R. 145-155).

He was admitted to Alachua General Hospital from 3/14/94 to 3/19/94 for gastritis.  (R. 156-159).  Plaintiff admitted to drinking and smoking crack prior to admission.  (R. 158).

**No. 1:05CV83-MMP/AK**

Plaintiff was admitted to Alachua General Hospital from 9/29/94 through 10/08/94 for chest pain and problems relating to "abusing alcohol and crack cocaine for a number of years..." (R. 160). He was a "chronic smoker, chronic alcohol user...chronic cocaine abuser since 1979." (R. 162). His cardiac problems were attributed to "coronary artery spasm secondary to cocaine." (R. 163). He was admitted on 9/30/94 to Vista Pavilion for drug and alcohol treatment. (R. 165).

Another hospital admission to Alachua General on January 4, 1996, following an ER admission the night before, was for abdominal pain after snorting cocaine and drinking alcohol. (R. 189-200).

Plaintiff was admitted to North Florida Regional Medical Center on June 22, 1995 for abdominal pain and cocaine overdose. (R. 166-184). He was brought by ambulance to the ER complaining of nausea, vomiting and stomach pain after using cocaine for two weeks non-stop and drinking vodka. (R. 182-183). His initial diagnoses were acute alcoholic gastritis, complicated by cocaine abuse." (R. 183). He remained at the hospital through August 15, 1995, during which time he "was told many times to abstain from alcohol or any other drugs such as cocaine." (R. 167). He was treated for a variety of problems, including abdominal abscesses, ulcers, renal failure, liver dysfunction, peripheral neuropathy, and other conditions which resolved prior to discharge except for foot pain. (R. 166). Other records from North Florida Regional Medical Center show an admission on March 4, 1999, for an incisional hernia. (R. 402-426).

**No. 1:05CV83-MMP/AK**

Treatment at Shands Hospital on December 11, 1995, was for ventral hernia.  (R. 185-189).  Other Shands HealthCare records include treatment on February 5, 1997, for abdominal pain at which he reported cocaine use within two weeks, alcohol within five days, and was still smoking a pack a day. (R. 435).  "He Is also advised quite strongly to quit alcohol and crack use."  (R. 436).  A clinic visit on July 9, 2001, for shortness of breath indicates he continued to smoking and was "[s]trongly urged him to discontinue smoking."  (R. 478).  An earlier visit for shortness of breath noted that he smoked and was not actively trying to quit and likely had COPD given his long history of smoking.  (R. 479).

University of Florida medical treatment records cover Plaintiff's medical history from 7/11/95 through 2/14/97.  (R. 246-280).  The notes are replete with references to his history of alcohol, cocaine, nicotine and marijuana use.  (R. 260, 271, 276, 279).  A report dated January 15, 1997, from Dr. Edward Valenstein, a neurologist, concerned Plaintiff's peripheral neuropathy.  (R. 248-250).  He found that nerve conduction studies, while not completely normal, "provide really very little evidence to support a peripheral neuropathy of any significant severity."  (R. 250).  "It is possible that he has a mid residual neuropathy after years of alcohol abuse that is now only picked up on sensory nerve conduction studies."  (R. 250).

A treatment note of June 18, 1997, indicates that Plaintiff "was advised quite strongly to quit alcohol and crack use."  (R. 307).

**No. 1:05CV83-MMP/AK**

A clinic visit on April 8, 1996, for treatment of his back pain included the admonition that "It has been suggested to him that he refrain from using tobacco, alcohol and cocaine, but this patient has, indeed, failed three separate attempts at rehabilitation."  (R. 272).  "This patient has a rather significant history of substance abuse which, of course, clouds the necessity for narcotics to control his pain."  (R. 272).  His pain treatment was frequently compromised because of his substance abuse.  (R. 308, 309, 317).

A consultative examination by Dr. Robert Greenberg was performed on September 13, 1996, for back pain and stomach problems.  (R. 211-215).  He admitted to prior drug and excessive alcohol use, but none in the "past several months."  (R. 211).  He reported smoking ½ pack of cigarettes a day.  (R. 211).  His back pain began after a 1984 injury and he is unable to walk without a cane because of constant burning in his feet.  (R. 211).  Dr. Greenberg found him to have decreased range of motion in his lumbar spine, with decreased sensation in both hands and feet, decreased grip strength, which he attributed to peripheral neuropathy probably secondary to malnutrition.  He also found his low back pain secondary to lumbar osteoarthritis from previous injury, and a history of stomach ulcers with ongoing abdominal pain.  (R. 212). He precluded him from work related activities that required standing, walking, heavy lifting or bending.  (R. 212).

A psychological evaluation was conducted by Dr. Leslie K. Rothman on September 30, 1996, for complaints of panic, anxiety, sleep disturbances, social

**No. 1:05CV83-MMP/AK**

withdrawal, and suicidal ideation.  (R. 216-218).  He claims to have a long history of

mental health treatment, referring to his inpatient treatment for drug and alcohol abuse.

(R. 216).  He admitted to current use of cocaine and alcohol "as frequently as finances

allow."  (R. 217).  He expressed hopelessness at his inability to work because of

physical pain all over his body.  (R. 217).  His diagnoses were Poly Substance

Dependence with Poly Substance Induced Mood Disorder with Mixed Anxiety and

Depressive Features.  (R. 218).  A mental RFC was obtained from Dr. Rothman on

August 27, 2001, which was qualified as to findings five years ago since Plaintiff was

last examined by Rothman on September 30, 1996, and he was found to have marked

limitations in his ability to carry out detailed instructions, to perform work within a

schedule, to sustain an ordinary routine, to complete a normal work day, to interact

appropriately with the general public, and to get along with co-workers.  (R. 483-485).

At a consultative examination performed by Dr. Guzman on August 7, 2000,

Plaintiff reported that he had quit smoking 8 months ago, quit drinking one year ago,

and quit smoking crack two years ago.  (R. 389).  Dr. Guzman found no significant

problems, except elevated blood pressure, which he referred Plaintiff to his primary

treating physician for treatment.  (R. 391).  He did a medical source statement of

Plaintiff's ability to work and limited him to light duty, lifting 10 to 20 pounds, no

limitations to standing, sitting or walking, but found some postural limitations (no

climbing, occasional balancing and crawling limitations), because of reported blurred

vision, and some environmental limitations (temperature extremes and hazards), and

**No. 1:05CV83-MMP/AK**

some manipulative limitations (reaching and feeling) based on his reported shoulder pain and peripheral neuropathy.

A consultative examination was performed by Dr. DePaz on March 11, 2002, and he found him to be capable of lifting up to 20 pounds, walking limited to two hours out of an eight hour day, with the requirement of a sit/stand option, only occasionally able to climb, balance, kneel, crouch and crawl, no stooping, because of chronic neck and back pain with a normal neuro exam "except for the complaints of dysesthesia in a stocking-glove distribution. (R. 564). He did a medical source statement of ability to do work related activities based on his assessment. (R. 566-569).

A Residual Functional Capacity Assessment dated October 1, 1996, by a non-examining physician found him capable of lifting 10 to 20 pounds, standing/sitting/walking six hours out of an eight hour day with no other limitations primarily because of his peptic ulcer disease, lumbar pain, and numbness in feet and hands. (R. 219-226).

A Residual Functional Capacity Assessment dated March 11, 1997, by a physician reviewing notes and assessments of Plaintiff's treating sources in the record found him capable of lifting 10 to 20 pounds, standing/sitting/walking six hours out of an eight hour day with postural limitations of only occasional climbing, balancing, stooping, kneeling, crouching and crawling because of his peripheral neuropathy, and he added that these limitations seemed feasible especially with the avoidance of drugs and alcohol. (R. 281-288).

**No. 1:05CV83-MMP/AK**

A Psychiatric Review Form dated October 15, 1996, found him to have a mood disorder and substance addiction disorder, severe, but not meeting any listings, and only causing slight restrictions in daily living.  (R. 227-235).  Another Psychiatric Review Form dated March 14, 1997, found him to have a substance abuse disorder and substance induced mood disorder, which were severe, but did not meet the listings, and had only slight effects upon his daily activities and social functioning.  (R. 293-301).

A mental capacity assessment dated October 15, 1996, found him to have no significant limitations, but moderate restrictions in ability to concentrate over extended periods of time and to perform activities within a schedule, and to complete a normal work day.  (R. 236-239).  Another mental capacity assessment dated March 14, 1997, found him only moderately limited in a few areas: the ability to concentrate over extended periods, the ability to complete a normal work week, and the ability to set realistic goals.  (R. 289-292).

Interrogatories were propounded to Dr. Sidney Friedlaender, a medical expert, who reviewed the medical record and concluded that Plaintiff meets the Listing 12.09 B and C for Substance Abuse and has limitations in lifting, bending, standing and walking.  (R. 576-577).  The expert also found that Plaintiff had failed to follow prescribed medical treatment because he had been repeatedly advised to quit smoking, drinking and using cocaine.  (R. 577).  The expert was of the opinion that significant improvement would have resulted had Plaintiff followed this advice "when first urged to do so."  (R. 577).  He opined that even if Plaintiff quit today there were be an improvement in his health,

**No. 1:05CV83-MMP/AK**

particularly his GI symptoms, as well as the stress related to family and personal relationships.  (R. 577).  He added that if Plaintiff had stopped all drug use the improvement would have been "marked."  (R. 578).

## F.   <u>SUMMARY OF THE ADMINISTRATIVE HEARING (HELD ON 8/30/2001)</u>

Counsel for Plaintiff was at the hearing with him.  (R. 580).  The ALJ acknowledged that the case had been remanded for additional review and additional evidence, including an orthopedic examination; re-evaluation of his mental impairments; re-evaluation of his RFC by a treating source; vocational expert testimony; and drug and alcohol analysis.  (R. 583-584).  His physical RFC is unchanged from the last hearing in 1998, and his mental health status is that he is taking antidepressants, which he gets from Dr. Smith, an internist.  (R. 588).  He saw a psychiatrist ten years ago several times, but is not currently being treated by one for his depression.  (R. 588).  He admitted to being hospitalized for substance abuse prior to 1995 for a twenty day period.  (R. 592).  Plaintiff testified that between October 1998 and August 2001 he drank a beer once or twice a month.  (R. 594).  He also testified to one cocaine relapse between that time period in December 2000 for one day, and then he testified that he could not remember how many times he used cocaine during 2000.  (R. 596).  When asked if he still smoked he said "No," but then admitted to telling his doctor that he smoked a pack a day one month prior to the hearing.  (R. 598).  He had cut down by the hearing to ½ pack a day.  (R. 598).  Plaintiff admits that he has been told by his doctor that smoking, drinking, and using cocaine would not help his neuropathy and COPD.

**No. 1:05CV83-MMP/AK**

(R. 599-600).  He admits that his ulcers have resolved.  (R. 602).  He testified that he

was trying to quit smoking by cutting back, but told his attorney that no one had

prescribed him patches, no doctor had sent him to a 12 step program for smoking or a

behavioral therapist to help him quit.  (R. 603-604).  Plaintiff testified that his depression

is worse, affecting four to five days out of a week, which causes him to sleep, not take

showers, and watch t.v. most of the time on a "bad day."  (R. 606-607).  He states that

he has been this way since 1995.  (R. 607).  When asked, Plaintiff admits that he can

carry 15 to 20 pounds, he can sit no more than one hour without needing to shift

because of pain in his lower back, and he can stand no more than 20 minutes at a time

because of pain in his legs.  (R. 608-609).  The vocational expert testified and was

asked to assume the limitations of an individual as described in the RFC prepared by

Dr. Guzman (R. 387-396).  (R. 612).  The expert found that he would not be able to

perform his past relevant work as a nurse's aide because of the lifting restrictions, but

there would be numerous other jobs he could perform.  (R. 612-613).  Counsel asked

the expert to add mental limitations included in a mental assessment form prepared by

Dr. Leslie Rothman.  (R. 483-485).  When these limitations were added to the

hypothetical, the vocational expert testified that none of the jobs he suggested would be

available to Plaintiff.  (R. 614).  The reasons were primarily that the limitations included

an inability to work a regular workweek and to be punctual.  (R. 614).  The ALJ

referenced an earlier assessment by Dr. Rothman dated December 30, 1996, (r. 216-

218), which listed his poly-substance dependency.  The ALJ and counsel discussed that

**No. 1:05CV83-MMP/AK**

depression was the main limitation and it has persisted after Plaintiff stopped drinking.

(R. 617-622).  Counsel argued that the drinking masked the underlying depression, and

the ALJ posed the counter argument, which is that the drinking caused the depression,

but counsel offered to file a post-hearing brief on the issue.  (R. 621-622).

**G.    DISCUSSION**

a)    Drug and Alcohol Use

If there is medical evidence of drug addiction or alcoholism, the ALJ must first

determine if the person is disabled using the standard five step approach.  20 CFR

§404.920.  Utilizing this approach, the ALJ determines whether Plaintiff meets the

requirements of Listing 12.09 for substance abuse disorders.[1]  See below.  Then he

must determine whether drug and alcohol use is a contributing factor material to

disability or whether the person would still be found disabled even if he or she stopped

taking drugs or alcohol.  20 CFR §404.1535.  In making this determination, the ALJ will

---

[1] Listing 12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.  The required level of severity for these disorder is met when the requirements in any of the following (A through I) are satisfied.
    A. Organic mental disorders.  Evaluate under 12.02.
    B. Depressive syndrome.  Evaluate under 12.04.
    C. Anxiety disorders.  Evaluate under 12/06.
    D.  Personality disorders.  Evaluate under 12.08.
    E.  Peripheral neuropathies.  Evaluate under 11.14.
    F.  Liver damage.  Evaluate under 5.05.
    G.  Gastritis.  Evaluate under 5.04.
    H.  Pancreatitis.  Evaluate under 5.08.
    I.  Seizures.  Evaluate under 11.02 or 11.03.

**No. 1:05CV83-MMP/AK**

evaluate which of his or her physical and mental limitations would remain if that person stopped using drugs or alcohol and then determine whether these remaining limitations would be disabling.  20 CFR §404.1535 (b)(2).[2]  Plaintiff carries the burden of proving that drug and alcohol use is not a contributing factor to his disability.  Doughty v. Apfel, 245 F.3d 1274, 1279-1280 (11th Cir. 2001).

Reviewing the medical history of Plaintiff, as set forth above, the Court can appreciate counsel's difficulty in arguing that drugs and alcohol are not a contributing factor to Plaintiff's disability.  Every hospital admission followed serious and prolonged drug and alcohol use, every diagnoses is related to this abuse, and every treating medical source told him to quit using.  Most of the admitting descriptions of Plaintiff characterize him as a cocaine addict, alcohol abuser, and such.

Plaintiff's primary complaints that he contends prevent him from working are back pain, neuropathy, and depression.  The ALJ examined each of the alleged conditions under the listing pertaining to them and found that none of them meet the requirements.  The evidence supports the ALJ's findings.  First, there is nothing in the medical evidence to support the severity of pain and limitation resulting from his back condition,

---

[2]  If drugs or alcohol use is determined to be a contributing factor, then a person must seek appropriate treatment at a facility approved by SSA for which they are not required to pay.  20 CFR §404.1536.  Appropriate treatment is determined with the involvement of a licensed additional professional on the basis of a detailed assessment of the claimant.  20 CFR §404.1537.  No benefits will be paid if the person does not seek treatment or fails to comply with the terms and conditions of treatment, which includes abstinence from drugs and alcohol, attendance in treatment sessions, improved social functioning and levels of gainful activity, participation in vocational rehabilitation and avoidance of criminal activity.  20 CFR §404.1536 and 404.1540.

No. 1:05CV83-MMP/AK

which he contends followed an injury in 1984, and which is unsupported by any objective testing.  He claims to walk with a cane, but not as result of his back pain, but from his peripheral neuropathy, which has been attributed to malnutrition resulting from his alcoholism, and was found not to be severe pursuant to objective testing.  Finally, it is common knowledge that alcohol is a depressant, thus even Plaintiff's depression can be attributed to alcohol abuse, but the Court need not rely on common knowledge, these questions have been posed to a medical expert who responded that Plaintiff's substance abuse was the cause of his physical and mental problems and if he had stopped when it was suggested to him to stop he would have marked improvement. The Court therefore finds that the evidence is overwhelming that alcohol, drug abuse and smoking are contributing factors to his inability to work, and he is therefore precluded from obtaining disability benefits on this ground alone.  The Court also finds that Plaintiff was admonished repeatedly to refrain from these substances, he was aware that their continued use was contributing to his physical conditions, and he did not follow these recommendations, which constitutes a failure to follow prescribed treatment.

b)     Hypothetical to the Expert

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical

No. 1:05CV83-MMP/AK

Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level."  Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).  See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).  "It is only when the claimant can clearly do unlimited types of  work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."  Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).  Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.  Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  Phillips, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).   The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication.

**No. 1:05CV83-MMP/AK**

<u>McSwain v. Bowen</u>, 814 F.2d 617, 619-20 (11th Cir. 1987).  The fact that Claimant sought no medical treatment for either his mental problems or any other ongoing health concerns militates against a finding of severity of these alleged impairments.  <u>Roberts v. Apfel</u>, 222 F.3d 466, 469 (8th Cir. 2000); <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997).

The record shows that Plaintiff sought no independent treatment for his depression, except to obtain antidepressants from his treating physician, an internist. Although Plaintiff describes debilitating depression affecting him four to five days a week and restricting his daily activities severely, he has sought no mental health treatment, other than what he received during substance abuse treatment years ago. Thus, there is no support for finding that his mental condition is severe and it was not error for the ALJ to exclude mental limitations from his hypothetical.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **21st** day of September, 2006.


**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



**<u>NOTICE TO THE PARTIES</u>**


**No. 1:05CV83-MMP/AK**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:05CV83-MMP/AK**